**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| INTERCONTINENTAL GREAT BRANDS LLC, <br> Plaintiff, <br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", <br> Defendants. | Case No. 2:26-cv-248-GSL-JEM <br><br> Judge Gretchen S. Lund <br><br> Magistrate Judge John E. Martin |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT XGMADILES DIRECT'S MOTION TO DISMISS UNDER RULE 12(b)(5) OR, IN THE ALTERNATIVE, TO QUASH SERVICE**

Defendant Xgmadiles Direct (No. 251) ("Defendant") submits this Memorandum of Law in support of Defendant's Motion to Dismiss under Rule 12(b)(5) or, in the alternative, to quash service.

## I. INTRODUCTION

Plaintiff Intercontinental Great Brands LLC ("Plaintiff")  chose email service after learning exactly where Defendant could be served. On July 6, 2026, Defendant's counsel sent Plaintiff's counsel an Amazon business-information page identifying Defendant's registered business name and physical address in Changsha, China. Plaintiff's counsel replied, discussed *Kangol* and the Hague Service Convention, and asked whether counsel would accept service. Counsel declined because he lacked authority, repeated that Plaintiff possessed the address, and expressly declined to waive service. Two days later, Plaintiff nevertheless emailed links to the summons, complaint, and restraining order. Dkt. 35-8 ¶¶ 2–5 & Dkts. 35-9, 35-10.

-1-

That email was not valid service. *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793, 799–802 (7th Cir. 2026), holds that an email transmitting initiating documents is service of process, that the Hague Service Convention controls when a Chinese defendant's address is known, and that China's Article 10 objection forecloses email service. The Court should dismiss without prejudice because Plaintiff made a deliberate litigation choice rather than an unsuccessful authorized attempt to bypass the Convention while preserving an approximately $89,000 account restraint. At minimum, the Court should quash service and impose concrete, Plaintiff-controlled deadlines so invalid service does not become an indefinite restraint.

This motion does not seek a pleading-stage adjudication of any portion of Count I. Defendant has already shown in its preliminary-injunction opposition that the accused toy falls outside the asserted registrations' goods and uses DREO, not OREO, so the counterfeiting-specific remedies in 15 U.S.C. §§ 1117(b) and (c) cannot justify an outsized restraint. Dkt. 35 at 3–4, 11–12. Defendant relies on that showing in the preliminary-injunction proceedings and preserves the issue for Rule 56 and other procedurally appropriate stages.

## II. BACKGROUND

### A. Plaintiff Obtained a Defendant-Blind Electronic-Service Order

Plaintiff filed this action against hundreds of defendants on May 28, 2026, and simultaneously sought leave to serve all of them by email. Dkt. 1; Dkt. 5. Its supporting papers did not describe any address inquiry directed to Defendant No. 251. They instead offered categorical assertions that marketplace sellers use false identities and addresses and that Plaintiff lacked identifying information for any defendant. Dkt. 5 at 3–5. The Court authorized electronic service on June 23, 2026. Dkt. 14; Dkt. 15; see Dkt. 35 at 4–5.

**B. Plaintiff Received Defendant's Address Before Attempting Service**

On July 6, 2026, Defendant's counsel emailed Plaintiff's counsel and attached the Amazon business-information page bearing Defendant's registered business name and Changsha address. Dkt. 35-8 ¶ 2; Dkt. 35-9; Dkt. 35-10. Plaintiff's counsel replied on July 11, addressed service after *Kangol*, and asked whether counsel would accept service. Dkt. 35-8 ¶ 3. On July 13, Defendant's counsel stated that he lacked authority to accept service, declined to waive it, and again pointed to the physical address already delivered. *Id.* ¶ 4. Plaintiff emailed the initiating documents on July 15 anyway. *Id.* ¶ 5; Dkt. 27 at 1.

The address is genuine and matches Defendant's business license. Dkt. 35-1 ¶¶ 9–10 & Dkts. 35-2, 35-3. The material point is not whether Plaintiff independently found an address in a public marketplace search; it is that Plaintiff actually possessed Defendant's physical address before it attempted service.

**C. The Accused Toy Does Not Use OREO and the Asserted Registrations Cover Food**

Schedule A identifies two registrations for Defendant: Registration No. 93,009, the OREO word mark for "biscuits," and Registration No. 1,901,838, a cookie design featuring OREO for "cookies." Dkt. 15, Sched. A at 44; Dkt. 1-1; Dkt. 35-7. The accused item is a sensory squeeze toy. Its Amazon listing identifies "Xgmadiles" as the Brand; OREO does not appear in the title, Brand field, description, or listing images; and the product medallion reads "DREO." Dkt. 35-1 ¶¶ 5–7 & Dkts. 35-4, 35-5. Defendant's documented revenue from the accused ASIN is approximately $6,124.22, yet approximately $89,000 is restrained. Dkt. 35-1 ¶¶ 12–15 & Dkt. 35-6.

### III. LEGAL STANDARDS

Once service is challenged under Rule 12(b)(5), Plaintiff bears the burden to prove effective service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Where service

is ineffective, the Court has discretion either to dismiss the action or to quash service while retaining the case. See *Marshall v. Warwick*, 155 F.3d 1027, 1032–33 (8th Cir. 1998).

## IV. ARGUMENT

### A. Email Service Is Prohibited Because Plaintiff Knew Defendant's Chinese Address

The Hague Service Convention "sets out the permitted methods of service and excludes all others" when it applies. *Kangol*, 177 F.4th at 800. An email transmitting links to a summons, complaint, and restraining order is service of process, not mere notice. *Id.* at 799–800. Because China has objected to Article 10 channels, the Convention prohibits email service on a defendant in China whose address is known. *Id.* at 801–02. Rule 4(f)(3) does not authorize a method prohibited by international agreement, even when a prior order authorized it. See Fed. R. Civ. P. 4(f)(3); *Kangol*, 177 F.4th at 801–02. Courts applying *Kangol* accordingly recognize that email service on Chinese entities is void where the Convention applies. *Semisilicon Technology Corp. v. Changzhou Jutai Electronic Co.*, 2026 WL 1694026, at *12 (N.D. Ill. June 11, 2026) ("Any email service on Chinese entities is therefore void.") (denying preliminary-injunction and electronic-service motions).

Article 1's "address not known" limitation cannot help Plaintiff. Courts ask whether the plaintiff used reasonably diligent efforts to ascertain and verify the mailing address. *Kangol*, 177 F.4th at 799. Plaintiff's mass application described no Defendant-specific inquiry. More decisively, Plaintiff had Defendant's actual physical address in hand nine days before the July 15 email. The July 11 request that counsel accept service and counsel's refusal to waive it do not make the address unknown or turn email into a Convention method. Plaintiff was required to use an authorized channel once it knew where Defendant could be served.

**B. Dismissal Is the Appropriate Primary Remedy for Plaintiff's Deliberate Choice**

Defendant does not rely on Rule 4(m)'s 90-day period or its good-cause framework; Rule 4(m) expressly excludes service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1). The relevant point is narrower: foreign service is not an unlimited license to avoid initiating the required process. Courts evaluate whether the plaintiff acted diligently in attempting foreign service. In *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005), the plaintiff retained a professional foreign-service agent two days after filing and, forty-one days later, sent the appropriate service materials to authorized governmental entities in Taiwan and Korea. Plaintiff here did the opposite. After receiving the address and discussing *Kangol*, it chose email and, on the present record, never initiated Article 5 service through China's Central Authority.

That choice matters because Plaintiff simultaneously seeks to keep approximately $89,000 of Defendant's working capital restrained while its accused listing generated only about $6,124.22. Dkt. 35 at 2–3, 11, 15–17. Although quashing rather than dismissing may be appropriate when a plaintiff has diligently pursued an authorized service method, this record shows no comparable diligence. Dismissal without prejudice is a proportionate exercise of the Court's discretion: it does not adjudicate the merits and leaves Plaintiff free to file and serve a properly supported action, but it prevents Plaintiff from obtaining the practical benefits of suit while knowingly bypassing the governing service mechanism. The Court should therefore dismiss under Rule 12(b)(5).

**C. Any Quash Order Should Impose Concrete Deadlines and Protect Defendant from an Open-Ended Restraint**

If the Court declines dismissal, it should quash the July 15 email service and require Plaintiff, within 21 days, to submit a complete Article 5 request, including required Chinese translations, to the People's Republic of China Central Authority. Plaintiff should file proof of

submission within three business days and status reports every 30 days. Missing a Plaintiff-controlled submission or reporting deadline should constitute grounds for prompt dismissal without prejudice as to Defendant and contemporaneous dissolution of any restraint as to Defendant.

Quashing service alone would not address the present harm. Defendant has already opposed Plaintiff's amended preliminary-injunction motion and demonstrated independent reasons to dissolve the restraint or, at minimum, reduce any interim restraint, on the present record and pending adjudication, to no more than $6,124.22. Dkt. 35 at 8–17. If the Court dismisses, it should contemporaneously deny the amended preliminary-injunction request as moot as to Defendant, dissolve all restraints as to Defendant, and direct immediate release of the restrained funds. If the action instead remains pending during Convention service, the Court should decide the pending preliminary-injunction motion on the Defendant-specific record, dissolve the account-wide restraint or cap any interim restraint, on the present record and pending adjudication, at no more than $6,124.22. It should further provide that, not as a deadline for completion of Convention service but as a limit on extraordinary interim relief, no asset restraint may remain beyond 180 days from the quash order absent a new Defendant-specific order based on then-current findings. That structure links the service remedy to the concrete harm without treating notice and formal service as identical under Rule 65(a)(1). See Dkt. 35 at 8–9.

**D. Defendant Has Not Waived the Service Defense; Misjoinder Is Not Part of This Motion**

Nor did Defendant waive the defense. This is its first Rule 12 motion; it has filed no responsive pleading; and its preliminary-injunction opposition expressly preserved insufficiency of service. Dkt. 35 at 1. A service objection is forfeited only if a defendant creates a reasonable expectation that it will defend on the merits or causes wasted judicial effort. *Kangol*, 177 F.4th at

797 (citing *Hedeen International, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016)). Preliminary settlement activity alone does not suffice. *Id.* (citing *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 887–88 (7th Cir. 2004)).

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010), likewise held that seeking a continuance and expedited discovery for an imminent preliminary-injunction hearing did not waive a Rule 12 defense. Defendant repeatedly declined to accept or waive service and promptly raised Rule 12(b)(5).

Defendant does not seek relief for misjoinder in this motion. Rules 20 and 21 provide a separate mechanism, and Rule 21 permits the Court to address misjoinder "at any time." Fed. R. Civ. P. 21. Omitting that issue from this first Rule 12 motion therefore does not waive it. If claims remain after the Court resolves service, Defendant may seek Rule 20/21 relief separately on an appropriate record.

### V. CONCLUSION

The Court should dismiss Plaintiff's claims against Defendant Xgmadiles Direct without prejudice under Rule 12(b)(5), contemporaneously dissolve all restraints and terminate ancillary relief as to Defendant, and deny Plaintiff's amended preliminary-injunction motion as moot as to Defendant. Alternatively, the Court should quash the July 15 email service; impose the 21-day submission, three-business-day proof, 30-day reporting, and 180-day restraint-sunset provisions described above; and dissolve the account-wide restraint or cap any interim restraint, on the present record and pending adjudication, at no more than $6,124.22.

Date: July 27, 2026                                  Respectfully submitted,

                                                     /s/ Roumin Xie
                                                     Roumin Xie, CA Bar No. 344439

Veritas Light Law Group P.C.
4340 Von Karman Ave, Suite 290
Newport Beach, CA 92660
682-200-9607
rouminxie@veritaslightlaw.com

*Counsel for Defendant Xgmadiles Direct*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on July 27, 2026, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record via the CM/ECF system.

/s/ Roumin Xie
Roumin Xie
Veritas Light Law Group P.C.
4340 Von Karman Ave, Suite 290
Newport Beach, CA 92660
682-200-9607
rouminxie@veritaslightlaw.com